IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRANDON BYNUM | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TRUSTEES OF THE UNIVERSITY | : | |
| OF PENNSYLVANIA, et al. | : | NO. 15-1466 |

MEMORANDUM

Dalzell, J.                                                                July 23, 2015

## I.      Introduction

We consider here defendants' motions to dismiss and for sanctions against plaintiff Brandon Bynum and his counsel. Bynum brings this action against the Trustees of the University of Pennsylvania, University of Pennsylvania Police Officers Nicole Michel, Charles Ritterson and Thomas DeVore, University of Pennsylvania Investigative Supervisor John Peterson, and University of Pennsylvania Police Sergeant David Adler, pursuant to 42 U.S.C. § 1983 and state law.

We have federal question jurisdiction over Bynum's Section 1983 claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Bynum's state law claims under 28 U.S.C. § 1367.

Defendants move to dismiss Bynum's entire complaint as untimely pursuant to Fed. R. Civ. P. 12(b)(6). In the alternative, they move to dismiss Counts I and II in their entirety, Counts III, IV, and V as to the Trustees only, and Count VI's claim for "interference with state constitutional rights." Defendants also move for sanctions against Bynum and his counsel pursuant to Fed. R. Civ. P. 11.

We first consider defendants' motion to dismiss and then their motion for sanctions.

II.    <u>**Standard of Review**</u>

A defendant moving to dismiss under Fed R. Civ. P. 12(b)(6) bears the burden of proving

that the plaintiff has failed to state a claim for relief. <u>See</u> Fed. R. Civ. P. 12(b)(6); <u>see also</u>, <u>e.g.</u>,

<u>Hedges v. United States</u>, 404 F.3d 744, 750 (3d Cir. 2005). To survive a Rule 12(b)(6) motion,

the complaint must contain sufficient factual matter, accepted as true, to state a facially plausible

claim to relief. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Bell Atlantic Corp. v. Twombly</u>, 550

U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." <u>Iqbal</u>, 556 U.S. at 678.

As the Supreme Court has stressed, "the tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of

the elements of a cause of action…do not suffice." <u>Id.</u> Courts "are not bound to accept as true a

legal conclusion couched as a factual allegation." <u>Twombly</u>, 550 U.S. at 555.

In the wake of <u>Twombly</u> and <u>Iqbal</u>, our Court of Appeals laid out a two-part test to apply

when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

> First, the factual and legal elements of a claim should be separated.
> The District Court must accept all of the complaint's well-pleaded
> facts as true, but may disregard any legal conclusions. Second, a
> District Court must then determine whether the facts alleged in the
> complaint are sufficient to show that the plaintiff has a 'plausible
> claim for relief.'

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations omitted). In

deciding a motion to dismiss, we may consider "the allegations contained in the complaint,

exhibits attached to the complaint and matters of public record," and any "undisputedly authentic

document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims

are based on the document." <u>Pension Benefits Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).

We recite the facts as they appear in the complaint.

### III.    <u>Factual and Procedural Background</u>

This is the second case Bynum has filed regarding an August 14, 2012 incident involving him and several University of Pennsylvania police personnel.

On July 31, 2014, Bynum filed a cause of action against the Trustees of the University of Pennsylvania, the University of Pennsylvania, University of Pennsylvania Police Officer Gary Cooper, and several John Doe defendants. Compl. at ¶ 1; <u>see</u> <u>Bynum v. Trustees of the University of Pennsylvania</u>, Case No. 14-cv-4548 ("<u>Bynum I</u>"). In <u>Bynum I</u>, we granted those defendants' motion to dismiss Counts I and II in their entirety, as well as Counts III, IV, and V against the Trustees. <u>See</u> <u>Bynum v. Trustees of the University of Pennsylvania, et al.</u>, 2014 WL 6473344, *6 (E.D. Pa. Nov. 18, 2014) (Dalzell, J.). The parties dismissed the University of Pennsylvania by stipulation. Bynum continues to pursue his case in <u>Bynum I</u> against the remaining named defendant, Officer Cooper, as well as the John Doe defendants, on Counts III, IV, and V, alleging excessive force, unlawful seizure, false arrest, and false imprisonment. Compl. at ¶ 2.

In <u>Bynum I</u>, Bynum alleged that he was the passenger on a motorcycle that Officer Cooper and the John Doe defendants chased, without justification.  They then attacked him with their batons, and attempted to knock the motorcycle over with their police vehicles. <u>Id.</u> at ¶ 3. Bynum was forced to jump from the motorcycle, injuring his leg. <u>Id.</u> Officer Cooper and the defendant John Doe officers allegedly caused further injury by using unreasonable and

unnecessary force against him, including an intentionally violent transport in the back of a police wagon. Id.

Bynum did not know the identities of the other officers involved in his apprehension and only knew Officer Cooper's name because of traffic citations Officer Cooper wrote against him. Id. at ¶ 4. Bynum alleges that Officer Cooper, and the defendants named in this action (Bynum II) conspired to cover up the illegal activities of other University of Pennsylvania police personnel. Id. at ¶ 7. He alleges that he only learned the identities of other University of Pennsylvania Police Department employees who had information about the August 14, 2012 incident when he received Officer Cooper's initial disclosures on January 27, 2015 in Bynum I. Id. at ¶ 8. Bynum also learned of the other officers allegedly involved in this incident through correspondence dated February 20, 2015, in which Officer Cooper responded to a request for production of documents in Bynum I.[1] Once Bynum learned the identities of the other officers

---

[1] From the documents Officer Cooper produced in Bynum I, Bynum learned about a Philadelphia Police Department Arrest Report ("PARS") describing the charges Bynum would face, including: criminal conspiracy, possession of an instrument of crime, reckless endangerment of another person, resisting arrest, fleeing a police officer, and disorderly conduct for fighting. Compl. at ¶ 11. Those charges were based on Officer Cooper's report that Bynum attempted to run him over with a dirt bike before fleeing on foot. Id. at ¶ 12. Bynum alleges, based on video-recordings produced by Officer Cooper in Bynum I, that the report is false. Id. at ¶ 13. Another document Officer Cooper produced on March 18, 2015 included a Philadelphia Police Department Investigation Report (75-49) in which Detective Charles Boyle determined that further investigation revealed that "there was no assault on Police or any other criminal acts, except Motor Vehicle Violations." Id. at ¶ 14.

Bynum alleges that once the security cameras demonstrated that Officer Cooper's report was false, Supervisor Peterson requested that the investigation be reassigned from the Southwest Detectives Division of the Philadelphia Police Department to the University of Pennsylvania Police Department and that the PARS entry be deleted from the Southwest Detectives Division's queue. Id. at ¶ 15 (citing to Compl. Ex. F). The PARS was deleted, Bynum was not charged with any crimes, and Bynum was unable to identify the individuals responsible for his injuries until after Officer Cooper produced additional documents on February 20, 2015 as part of discovery in Bynum I. Id. at ¶ 16. Bynum alleges that Peterson's actions "amount to active concealment, which prevented Plaintiff from learning the identity of all those responsible for his injuries." Id. at ¶ 17.

allegedly involved in his apprehension, Bynum requested that defense counsel consent to have the newly-learned individuals' names substituted for the John Does listed in <u>Bynum I</u>. <u>Id.</u> at ¶ 18. Defense counsel refused, claiming that the statute of limitations had run. <u>Id.</u> at ¶ 19. Bynum believed that the discovery rule and equitable tolling barred defendants' statute of limitations defense because the defendants' conduct concealed the identities of those who were allegedly responsible for his injuries. <u>Id.</u> at ¶ 20.

On March 23, 2015, Bynum filed the present action, <u>Bynum II</u>, against the Trustees of the University of Pennsylvania and the five newly identified University of Pennsylvania Police Department personnel -- Officers Michel, Ritterson and DeVore, Supervisor John Peterson, and Sergeant Adler. In <u>Bynum II</u>, Bynum reiterates much of the content from the complaint filed in <u>Bynum I</u> except that he includes specific allegations regarding the conduct of Officers Michel, Ritterson and Devore and Sergeant Adler during his apprehension and transport, and of Supervisor Peterson's conduct afterward.[2]

---

[2]     The complaint in <u>Bynum II</u> alleges as follows: On August 14, 2012, Bynum was a passenger on a motorcycle near 3800 Market Street in Philadelphia, Pennsylvania. Compl. at ¶ 34. Officers Michel, Ritterson and DeVore began pursuing the motorcycle outside of the Penn Police's patrol zone. <u>Id.</u> at ¶ 37. Officers Michel, Ritterson and DeVore attacked Bynum with their batons and used their vehicles as weapons against him, all without activating their emergency signals. <u>Id.</u> at ¶ 38. The officers' actions forced Bynum to jump from the moving motorcycle. <u>Id.</u> at ¶ 39. Bynum suffered, among other injuries, an injury to his left leg. <u>Id.</u> at ¶ 40. The officers surrounded Bynum, who was lying on the ground, and leaned on and put unnecessary pressure on his injured left leg while they handcuffed him. <u>Id.</u> at ¶ 41. Bynum alleges, based on a report filed by Detective Boyle, that the officers unlawfully handcuffed him because Bynum "did not assault Police or commit any other criminal acts except alleged motor vehicle violations for which police do not have the power to arrest." <u>Id.</u> The officers continued to lean on Bynum's injured left leg, causing further pain and suffering. <u>Id.</u> at ¶ 42.

Over the radio, Officer Michel requested medics because Bynum was complaining about his leg. <u>Id.</u> at ¶ 68. Four minutes later Sergeant Adler, then on the scene, instructed the Penn Police Dispatcher to "recall rescue" because the officers would transport Bynum. <u>Id.</u> at ¶ 70. Officers Michel, DeVore, Ritterson and Sergeant Adler then forced Bynum to stand despite his obvious leg injury, ordered him to walk to the police wagon, and dragged him when he could not. <u>Id.</u> at ¶ 72. The officers threw Bynum into the back of the wagon and did not secure him to a seat. <u>Id.</u> at ¶ 73. Officers DeVore and Ritterson, operating the police wagon, reported that they

Bynum asserts six claims in <u>Bynum II</u>. In Count I, Bynum brings a <u>Monell</u> claim under Section 1983 against the Trustees alleging that the lack of investigation or discipline of Officers Cooper, Michel, DeVore and Ritterson, Sergeant Adler, and Supervisor Peterson demonstrates that the Trustees have a custom or policy of deliberate indifference to the constitutional rights of Philadelphians, causing the violation of Bynum's civil rights. Compl. at ¶¶ 101-02. In Count II, Bynum seeks injunctive and declaratory relief against the Trustees for civil rights violations. <u>Id.</u> at ¶¶ 111-18. In Count III, Bynum brings a claim for excessive force under Section 1983 against Officers Michel, DeVore and Ritterson and Sergeant Adler. <u>Id.</u> at ¶¶ 120-24.

In Count IV, Bynum brings a claim for unlawful seizure under Section 1983 against Officers Michel, DeVore and Ritterson, and Sergeant Adler. <u>Id.</u> at ¶¶ 126-29. In Count V, Bynum brings a claim of denial of access to the courts under Section 1983 against Officers Michel, DeVore and Ritterson, Sergeant Adler, and Supervisor Peterson. <u>Id.</u> at ¶¶ 131-37. In Count VI, Bynum brings a claim against Officers Michel, DeVore and Ritterson, and Sergeant Adler under state law for assault and battery, false imprisonment, abuse of process, negligent infliction of emotional distress, interference with state constitutional rights, negligence, and gross negligence. <u>Id.</u> at ¶ 139.

---

had Bynum in custody and transported him to the hospital. <u>Id.</u> at ¶ 74. Officers DeVore and Ritterson gave Bynum a "nickel ride" on the way to the hospital, meaning they "were purposefully driving in such a manner so that Plaintiff was thrown all around in the back" of the police wagon. <u>Id.</u> at ¶ 75. Once inside the hospital, Officers DeVore and Ritterson handcuffed Bynum to a bed. <u>Id.</u> at ¶ 76. Bynum was released from his handcuffs after a doctor entered the room.  <u>Id.</u> at ¶ 82. Six days later, and after several procedures to correct a closed left tibial plateau fracture, Bynum was released from the hospital. <u>Id.</u> at ¶¶ 84-86, 88, & 90.

**IV.**    <u>**Discussion**</u>

Defendants seek to dismiss <u>Bynum II</u> arguing that (1) it is untimely filed under the applicable two-year statute of limitations, (2) portions of the complaint fail to state a claim as a matter of law, and (3) portions of the complaint are barred by <u>res judicata</u>. MTD at 7.

**A.**    <u>**Whether Bynum II Was Timely Filed**</u>

Defendants contend that the statute of limitations began to run on August 14, 2012 because Bynum knew at the moment of the incident that he had been injured and that multiple officers were present at the scene. <u>Id.</u> at 8. Defendants argue that Bynum's failure to file <u>Bynum I</u> until two weeks before the statute of limitations ran manifests a lack of diligence, which defendants argue continued even after Bynum filed <u>Bynum I</u>, "as Plaintiff did nothing to ascertain the identities of the officers. Plaintiff did not even serve initial discovery requests until January 9, 2015." <u>Id.</u> at 9.

Bynum responds that he has pled sufficient facts showing an entitlement to equitable tolling such that his complaint cannot be dismissed on a motion under Rule 12(b)(6). Pl. Resp. at 7. Specifically, Bynum argues that the discovery rule, equitable tolling doctrine, and fraudulent concealment, all bar defendants' statute of limitations defense. <u>Id.</u> at 8.

Although the defenses in Fed. R. Civ. P. 12(b)(6) do not include limitations defenses, our Court of Appeals permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of  limitations." <u>Robinson v. Johnson</u>, 313 F.3d 128, 135 (3d Cir. 2002) (quoting <u>Hanna v. United States Veteran's Admin. Hosp.</u>, 514 F.2d 1092, 1094 (3d Cir. 1975)). If the bar is not facially apparent, then it may not afford the basis for a dismissal under Rule 12(b)(6). <u>Id.</u> (citing <u>Bethel v. Jendoco Constr. Corp.</u>, 570 F.2d 1168, 1174 (3d Cir. 1978)).

The length of the statute of limitations for a Section 1983 cause of action is governed by the personal injury tort law of the state where the cause of action arose. Wallace v. Kato, 549 U.S. 384, 387 (2007); Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009). Pennsylvania has a two-year statute of limitations for assault, battery, false imprisonment, false arrest, malicious prosecution, and malicious abuse of process, among other torts. 42 Pa. Cons. Stat. Ann. § 5524. The statute of limitations for a Section 1983 claim arising in Pennsylvania is therefore two years. Kach, 589 F.3d at 634; Kost v. Kozakiewicz, 1 F.3d 176, 190 (3d Cir. 1993) (explaining that all Section 1983 actions are classified as claims for personal injury for the purposes of determining the limitations period under the applicable state law).

But federal law governs questions regarding the accrual of Section 1983 claims, and therefore the limitations period begins to run from the time when the plaintiff knew, or had reason to know, of the injury which constitutes the basis of the Section 1983 claim. Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991). Determining when a claim accrues is an objective inquiry as we must ask whether a reasonable person would have known of the injury, not what the plaintiff actually knew. Kach, 589 F.3d at 634; Barren by Barren v. United States, 839 F.2d 987, 990 (3d Cir. 1988). A cause of action accrues at the time of the last event necessary to complete the tort -- usually when the plaintiff suffers an injury. Kach, 589 F.3d at 634 (citing United States v. Kubrick, 444 U.S. 111, 120 (1979)).

Viewing the facts in the light most favorable to Bynum as the non-moving party, Bynum's Section 1983 claims for excessive force and unlawful seizure accrued on August 14, 2012 when he was apprehended by the defendant officers. At the time he was forced to jump from the motorcycle, he knew -- and a reasonable person would have known -- that he injured his leg. Similarly, Bynum knew, and a reasonable person would have known, of the injuries

8

sustained as a result of the alleged "nickel ride" to the hospital. The two-year period of limitations for Bynum's Section 1983 claims therefore began to run on August 14, 2012 and -- absent any tolling -- would have ended on August 14, 2014. Bynum filed his related lawsuit, Bynum I, on July 31, 2014, well within the statute of limitations.[3] But Bynum filed Bynum II, this lawsuit, on March 23, 2015, after the statute of limitations would have run absent any tolling. Bynum II is only timely filed if Bynum is entitled to the benefit of equitable tolling or a related doctrine that excuses or permits the late filing of this claim.

As explained above, state law controls the length of a statute of limitations for a Section 1983 claim, even though federal law governs when that Section 1983 claim accrues. As such, state tolling rules are operative. But, when state tolling rules contradict federal law or policy, there are limited circumstances when a federal court may turn to the federal tolling doctrine. Lake v. Arnold, 232 F.3d 360, 370 (3d Cir. 2000). Federal courts may toll statutes of limitations for federal laws where the plaintiff "in some extraordinary way has been prevented from asserting his or her rights." Id. (quoting Robinson v. Dalton, 107 F.3d 1018, 1022 (3d Cir. 1997)). We will first consider Pennsylvania's tolling rules, and, if necessary, federal tolling doctrine.

One Pennsylvania tolling principle is known as the discovery rule. Bohus v. Beloff, 950 F.2d 919, 924 (3d Cir. 1991). The discovery rule tolls the statute of limitations when a plaintiff, despite the exercise of due diligence, is unable to know of the existence of an injury and its

---

[3] We pause to note that defendants make much of the filing date of Bynum I as being only two weeks before the expiration of the statute of limitations. One salutary effect of a statute of limitations is a bright-line rule for potential litigants regarding by when they must file their claims. Just as there are no extra points for filing a claim early in the period of limitations, there are no demerits for filing a claim toward the end of the period of limitations. What matters is whether a plaintiff files before the statute of limitations runs, based on when the action accrues, or, as we will discuss momentarily, whether any tolling principles apply to extend the statute of limitation.

cause. Id. (citing Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc., 468 A.2d 468, 471 (Pa. 1983)). A corollary to the discovery rule is the doctrine of fraudulent concealment. Bohus, 950 F.2d at 925. That doctrine tolls the statute of limitations where "through fraud or concealment the defendant causes the plaintiff to relax his vigilance or deviate from the right of inquiry." Id. (quoting Ciccarelli v. Carey Canadian Mines, Ltd., 757 F.2d 548, 556 (3d Cir. 1985)). Fraudulent concealment may be intentional or unintentional, but mere mistake, misunderstanding, or lack of knowledge is insufficient. Id. Pennsylvania courts have not required this type of fraud to be "in the strictest sense encompassing an intent to deceive, but rather fraud in the broadest sense which includes an unintentional deception." Ciccarelli, 757 F.2d at 556 (citing Nesbitt v. Erie Coach Co., 204 A.2d 473, 476 (Pa. 1964)). Still, the defendant must "have done something amounting to an affirmative inducement to plaintiff to delay bringing the action." Id. (citing Gravinese v. Johns-Mansville Corp., 471 A.2d 1233, 1238 (Pa. Super. Ct. 1984)). When either the discovery rule or the doctrine of fraudulent concealment applies, the statute of limitations is tolled until the plaintiff knew or, using reasonable diligence, should have known of the claim in question. Bohus, 950 F.2d at 925-26.

   With respect to "reasonable diligence," our Court of Appeals has observed: "There are very few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful. This is what is meant by reasonable diligence." Vernau v. Vic's Market, Inc., 896 F.2d 43, 46 (3d Cir. 1990).  As a jury should generally determine when an injured party should have been reasonably aware of his injury, only "where the facts are so clear that reasonable minds cannot differ may the commencement of the limitation period be determined as a matter of law." Knopick v. Connelly,

639 F.3d 600, 611 (3d Cir. 2011) (quoting Coregis Ins. Co. v. Baratta & Fenerty, Ltd., 264 F.3d 302, 307 (3d Cir. 2001)).

Our Court of Appeals has observed that "because the question whether a particular party is eligible for equitable tolling generally requires consideration of evidence beyond the pleadings, such tolling is not generally amenable to resolution on a Rule 12(b)(6) motion." In re Community Bank of N. Va., 622 F.3d 275, 301-02 (3d Cir. 2010) (citing decisions from the Courts of Appeals for the Ninth and Seventh Circuits).

Equitable tolling under federal law is appropriate when (1) a defendant actively misleads a plaintiff with respect to her cause of action, (2) the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances, or (3) a plaintiff asserts her claims in a timely manner but has done so in the wrong forum. Lake, 232 F.3d at 370 n. 9 (citing Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994)).

As we have explained, courts are skeptical about dismissing complaints on a Rule 12(b)(6) motion on statute of limitations grounds unless the bar is apparent on its face, and the question of equitable tolling is generally not amenable to resolution on a Rule 12(b)(6) motion. But, here, we can resolve these matters because while the bar is facially apparent, Bynum has also demonstrated his qualification for equitable tolling under Pennsylvania's discovery rule.

Bynum timely filed his action in Bynum I, asserting that Officer Cooper, along with other unnamed and unknown John Doe officers, violated his civil rights. In the process of pursuing his claims in Bynum I, Bynum learned the identities of the previously-unknown officers. Bynum learned who these officers were based on Officer Cooper's self-executing disclosures and documents that Officer Cooper produced during discovery. Notwithstanding defendants' complaints that Bynum delayed discovering the identities of the other officers, he proceeded

11

diligently: he filed <u>Bynum I</u> within the statute of limitations, naming as "John Does" those officers whom he believed violated his civil rights, but whose names he did not know. He responded to defendants' motion to dismiss, which the Court disposed of on November 18, 2014. <u>See</u> <u>Bynum v. Trustees of the University of Pennsylvania, et al.</u>, 2014 WL 6473344, *6 (E.D. Pa. Nov. 18, 2014) (Dalzell, J.). The remaining defendant in <u>Bynum I</u>, Officer Cooper, answered the complaint on December 2, 2014. After a Rule 16 conference on January 14, 2015, Bynum began exchanging discovery with Officer Cooper. Accepting the facts as pled in the complaint, until Bynum received Officer Cooper's self-executing disclosures and also exchanged documents with his adversary, he had no reason to know the names of the additional officers involved in his apprehension or to know that University of Pennsylvania police personnel might have taken action to investigate, alter, or amend documents related to his apprehension.[4]

As explained in <u>Vernau</u>, diligence can discover most facts, but "there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful." 896 F.2d at 46. Bynum proceeded with reasonable diligence when he filed <u>Bynum I</u> within the applicable statute of limitations, responded to the defendants' motion to dismiss, attended the Rule 16 conference, and began to exchange discovery with Officer Cooper, the remaining defendant. When, in the process of that discovery, he learned not only the names of the John Doe officers involved in his apprehension, but of additional officers involved after-the-fact, he moved promptly to include those new defendants in his lawsuit. Bynum is therefore entitled to the benefit of Pennsylvania's discovery rule, which tolls the statute of limitations when a plaintiff,

---

[4] In their reply, defendants argue that Bynum "had many opportunities to ascertain the identities of the John Doe defendants in <u>Bynum I</u>, such as by filing a writ in state court and taking pre-complaint discovery pursuant to Pa. R. Civ. P. 4003.8 or filing a motion for expedited discovery with this Court for the limited purpose of identifying the John Doe defendants." Def. Reply at 2. Defendants cite no authority for their suggestion that Bynum was required to proceed in either manner.

despite the exercise of due diligence, is unable to know of the existence of an injury and its

cause. While Bynum knew of his injury the day it occurred, he was unable to ascertain, despite

the exercise of due diligence, the names of the John Doe officers involved in his apprehension

and its aftermath. The statute of limitations, which otherwise would have run on August 14,

2014, was therefore tolled until Bynum knew or, using reasonable diligence, should have known,

of the cause of his particular claim. Bohus, 950 F.2d at 925-26. Bynum learned the identities of

the additional officers involved in his apprehension when Officer Cooper disclosed them on

January 27, 2015, and of the individual officers involved in the apprehension's aftermath when

Officer Cooper exchanged certain discovery documents on February 20, 2015. Even taking the

earlier date -- January 27, 2015 -- Bynum filed his complaint in Bynum II on March 23, 2015, a

little less than two months after he learned what he needed to know to pursue his claims against

the proper defendants.

We therefore find that Bynum II was timely filed because the applicable statute of

limitations was tolled until Bynum, through the exercise of reasonable diligence, discovered the

names of the other individual officers involved in his apprehension and its aftermath during the

process of discovery in Bynum I.

### B.      Whether The Complaint States A Claim As A Matter of Law

Defendants argue that Bynum's Monell claims against the Trustees in Counts I and II,

and his official capacity claims against the individual defendants fail as a matter of law because a

municipality cannot be held liable for alleged constitutional violations in the absence of an

official policy or custom that caused the alleged violations to occur. MTD at 13 (citing Monell v.

13

<u>Department of Soc. Servs. of City of N. Y.</u>, 436 U.S. 658 (1978)). [5] Defendants also contend that Bynum's <u>Monell</u> allegations are unsupported and conclusory, and that his claim for "interference with state constitutional rights" should be dismissed because there is no such cause of action under Pennsylvania law. <u>Id.</u> at 16.

Bynum argues that the complaint does state a <u>Monell</u> claim because it specifically alleges the police officers' misconduct and how they were never disciplined or sanctioned. Pl. Resp. at 18-19. Bynum also argues that "interference with state constitutional rights" should not be stricken from the complaint because of the "open court provision" in the Commonwealth of Pennsylvania's Constitution Article I, Section 11, and Bynum's request for declaratory and injunctive relief. <u>Id.</u> at 19-20.

It has long been settled that a municipality is not liable for its employees' constitutional torts under a theory of <u>respondeat</u> <u>superior</u> -- that is, a municipality cannot be held liable for its employees' torts solely by virtue of their employment relationship. <u>Monell</u>, 436 U.S. at 691. A municipality is liable for its employees' violations of Section 1983 only where the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." <u>Id.</u> at 694.

A plaintiff can demonstrate the existence of a government policy by showing "that a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issued an official statement of policy." <u>Jiminez v. All American Rathskeller, Inc.</u>, 503 F.3d 247, 250 (3d Cir. 2007) (quoting <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 481 (1986)) (internal alterations omitted). To show a custom, a plaintiff must establish that state actors

---

[5] Whether Penn is a state actor under <u>Jackson v. Metropolitan Edison Co.</u>, 419 U.S. 345 (1974) is an open question.  As will be seen below, we need not delve into that vexing question in light of our disposition of the merits of defendants' Rule 12(b)(6) motion.

engaged in a course of conduct so permanent and well-settled that it operated as law. Id. (citing

Monell, 436 U.S. at 690).

In either case, a plaintiff must show a government policymaker's responsibility for, or

acquiescence of, the alleged tort.  Id. (citing Andrews v. City of Phila., 895 F.2d 1496, 1480 (3d

Cir. 1990)). The plaintiff need not specifically identify the responsible decisionmaker since

practices that are considered custom or policy under Monell are ascribable to municipal

decisionmakers. Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). Thus, even if a custom

or policy "has not been formally approved by an appropriate decisionmaker," it "may fairly

subject a municipality to liability on the theory that the relevant practice is so widespread as to

have the force of law." Board of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997).

To be liable under Section 1983, "the government must act with deliberate indifference to

the purported constitutional deprivation." Jiminez, 503 F.3d at 250. As a result, a failure to train

may constitute a policy or custom giving rise to Section 1983 liability for a municipality only if

the failure demonstrates deliberate indifference to residents' constitutional rights. See City of

Canton v. Harris, 489 U.S. 378, 389 (1989). A failure to train evinces deliberate indifference if

> in light of the duties assigned to specific officers or employees the
> need for more or different training is so obvious, and the
> inadequacy so likely to result in the violation of constitutional
> rights, that the policymakers of the city can reasonably be said to
> have been deliberately indifferent to the need.

Id. at 390.

There must also be "a 'direct causal link between a municipal policy or custom and the

alleged constitutional deprivation' to ground municipal liability." Jiminez, 503 F.3d at 249

(quoting City of Canton, 489 U.S. at 385). As our Court of Appeals has explained, causation is

often a question for the jury:

> [T]o sustain a § 1983 action against the City, plaintiffs must simply establish a municipal custom coupled with causation – i.e., that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury. If the City is shown to have tolerated known misconduct by police officers, the issue whether the City's inaction contributed to the individual officers' decision to arrest the plaintiffs unlawfully in [a given] instance is a question of fact for the jury.

Bielevicz, 915 F.2d at 851.

Bynum's Monell claims fail as a matter of law because threadbare recitals of a Monell claim do not suffice post-Twombly and -Iqbal. Bynum fails to identify any policy having anything to do with his injuries, or causally related to them, and fails to plead facts to support his contention that there was any well-settled or permanent custom of failing to discipline, train, or investigate University of Pennsylvania personnel that led to his injuries. Without either a policy or custom, or any direct causal link between such a policy or custom, and the alleged deprivation of constitutional rights, Bynum's Monell claims fail as a matter of law.

We will therefore dismiss Counts I and II of the Complaint.[6]

Count VI of Bynum's complaint refers to "interference with state constitutional rights." No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution. Pocono Mountain Charter Sch., 442 F. App'x at 687. But a party may seek equitable remedies under the Pennsylvania Constitution. Id. at 688 (citing cases). Bynum alleges violations of Article I, Section 11 of the Pennsylvania Constitution, which provides in part: "All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right

---

[6] The complaint does not appear to bring suit against any of the individually-named defendants in their official capacities, and so we need not address defendants' arguments regarding official capacity suits.

16

and justice administered without sale, denial, or delay." Based on the open courts' provision, and Bynum's allegations in Count V of the complaint that defendants denied him access to the courts in violation of Section 1983 and the First Amendment, Bynum argues that he has stated a claim upon which relief can be granted. Pl. Resp. at 19-20; Compl. at ¶¶ 131-37.

Defendants have not moved to dismiss Count V of the complaint specifically on its merits, but only to the extent that they allege it is barred by the statute of limitations and res judicata. Taking the well-pled facts recited in the complaint as true, Bynum was hindered from pursuing his claims because the defendants did not disclose their identities within the statute of limitations period and only did so through responses to discovery in Bynum I.

But this is not what is meant by the right of access to the courts in the cases Bynum cites in Count V of his complaint. Bounds v. Smith pertains to adequate, effective, and meaningful access to the courts by inmates with respect to prisoners' indigence and their need for materials in order to meaningfully appeal their convictions. 430 U.S. 817, 822 (1977). Milhouse v. Carlson pertains to inmate access to the courts to file civil rights lawsuits against prison officials without hindrance or fear of retaliation from those prison officials. 652 F.2d 371, 373-74 (3d Cir. 1981).

Even if a party does not make a formal motion to dismiss, we may, sua sponte, dismiss a complaint if its inadequacy is apparent as a matter of law. Coggins v. Carpenter, 468 F. Supp. 270, 279 (E.D. Pa. 1979) (citing 5 Wright & Miller, Federal Practice & Procedure, § 1357); see also Sutton v. Hilco Homes Corp., 283 F. Supp. 492, 494 n. 2 (E.D. Pa. 1968); 5B Federal Practice & Procedure, § 1357 (3d ed.) (explaining that a district court, on its own initiative, may note a complaint's inadequacy and dismiss it for failure to state a claim so long as the procedure employed is fair to the parties).

17

We therefore find that Bynum's complaint, to the extent it pleads a cause of action in Count V for denial of access to the courts, and again pleads that claim with respect to an injunctive or declaratory remedy under the open courts provision of the Pennsylvania Constitution, fails to state a claim upon which relief can be granted. We will therefore grant defendants' motion to dismiss the portion of Count VI of the complaint that refers to "interference with state constitutional rights" and dismiss the entirety of Count V.

We will therefore dismiss Counts I, II, V, and the portion of Count VI referring to "interference with state constitutional rights" with prejudice.

### C.      Whether Res Judicata Bars Portions Of The Complaint

Defendants argue that the Court's dismissal in Bynum I of Bynum's Monell claims against the Trustees, the official capacity claims against the individual officers in Counts III, IV, and V, and the claim for interference with state constitutional rights in Count VI constitutes res judicata and bars Bynum's claims in Bynum II under Monell (Counts I and II), official capacity claims against the individual officers (Counts III, IV, and V), and his claim for interference with state constitutional rights (Count VI). MTD at 10. We need not address defendants' res judicata arguments because, as discussed in Section IV.B, Bynum's complaint does not raise any official capacity claims against the named officers, fails to state a Monell claim as a matter of law, and fails to state a claim for "interference with state constitutional rights" in Count VI.

### V.      Motion For Sanctions

Defendants also move for sanctions against Bynum and his counsel pursuant to Fed. R. Civ. P. 11.  Defendants argue for sanctions on the basis that Bynum and his counsel have presented pleadings to the Court that (1) intentionally attempt to circumvent the service

requirements under Fed. R. Civ. P. 4, (2) are barred by the doctrine of <u>res judicata</u>, and (3) assert

claims that they know to be time-barred. <u>Id.</u> at 6.

Fed. R. Civ. P. 11 permits the Court to sanction parties for various sins -- including

presenting pleadings or motions for an improper purpose, making unwarranted or frivolous

claims or legal contentions, and making factual contentions without evidentiary support. <u>See,</u>

<u>e.g.</u>, Fed. R. Civ. P. 11(b) (listing four representations an attorney certifies when he or she

presents a pleading). When evaluating conduct challenged under Rule 11, we consider whether

the conduct was reasonable under the circumstances with reasonableness defined as the objective

knowledge or belief at the time of filing that the claim was well-grounded in law and fact. <u>Ford</u>

<u>Motor Co. v. Summit Motor Prods., Inc.</u>, 930 F.2d 277, 289 (3d Cir. 1991) (explaining further

that sanctions are for the exceptional circumstance when a motion or claim is patently frivolous

or meritless).

We find that Bynum's complaint does not warrant sanctions under Rule 11. As explained

in Part V, Bynum has non-frivolous and sometimes meritorious arguments to support his claims.

We will therefore deny defendants' motion for sanctions.

**VI.**     **Consolidation**

Fed. R. Civ. P. 42(a)(2) permits the Court to consolidate actions involving common

questions of law or fact. Rule 42(a) "confers upon a district court broad power, whether at the

request of a party or upon its own initiative, to consolidate causes for trial as may facilitate the

administration of justice." <u>Ellerman Lines, Ltd. v. Atlantic & Gulf Stevedores, Inc.</u>, 339 F.2d

673, 675 (3d Cir. 1964). Both <u>Bynum I</u> and this case, <u>Bynum II</u>, involve common questions of

fact regarding Bynum's apprehension on August 14, 2012 and its aftermath, and it is in the

interests of judicial and party efficiency to consolidate these matters. We will therefore consolidate these cases.

**VII.**   **Conclusion**

Principles of equitable tolling save this matter from the two-year statute of limitation, but Counts I, II, V, and the portion of Count VI referring to "interference with state constitutional rights", fail to state claims as a matter of law. We will therefore grant defendants' motion to dismiss Counts I, II, V, and the portion of Count VI referring to "interference with state constitutional rights." We will deny defendants' motion for sanctions, as the arguments Bynum advanced were non-frivolous. We will also consolidate these actions.

An appropriate Order follows.

BY THE COURT:

_/s/ Stewart Dalzell, J._
Stewart Dalzell, J.