IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRANDON BYNUM | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| | : | |
| v. | : | NO. 15-1466 |
| | : | |
| TRUSTEES OF THE UNIVERSITY OF | : | |
| PENNSYLVANIA, et al | : | |
| Defendant | : | |

**<u>MEMORANDUM OPINION</u>**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                      January 6, 2017

## I.      INTRODUCTION

Plaintiff Brandon Bynum ("Plaintiff" or "Bynum") brings this action against the University of Pennsylvania Police Officers Gary Cooper ("Officer Cooper"), Nicole Michel ("Officer Michel"), Charles Ritterson ("Officer Ritterson"), and Thomas DeVore ("Officer DeVore"), and Sergeant David Adler ("Sgt. Adler") (collectively, the "Penn Police Defendants" or "Defendants"), alleging constitutional and state law violations.

Presently before the Court is the Motion of Defendants, Gary Cooper, Nicole Michel, Charles Ritterson, Thomas DeVore, and David Adler, for Summary Judgment ("Def. Mot.") and accompanying Memorandum ("Def. Br.") (Doc. 44); Statement of Material Facts in Support of Motion of Defendants, Gary Cooper, Nicole Michel, Charles Ritterson, Thomas DeVore, and David Adler, for Summary Judgment ("SMF") (Doc. 44-1); Plaintiff, Brandon Bynum's, Memorandum of Law in Response to Defendants, Gary Cooper, Nicole Michel, Charles Ritterson, Thomas DeVore, and, David Adler's Motion for Summary Judgment ("Pl. Br.") (Doc. 46-2); Plaintiff, Brandon Bynum's, Response to Defendants' Statement of Undisputed Material

1

Facts ("RSUMF") (Doc. 46) and Counterstatement ("CSUMF") (Doc. 46-1); and the Reply Brief in Support of Motion of Defendants, Gary Cooper, Nicole Michel, Charles Ritterson, and Thomas DeVore, for Summary Judgment ("Def. Reply") (Doc. 47).  By this motion, Defendants assert that "the undisputed facts dictate that Plaintiff's federal civil rights claims and state law tort claims fail as a matter of law." (Def. Br. at 6.)

Upon consideration of the materials presented and the extensive oral argument held on December 9, 2016, we first conclude that Plaintiff's claims against Defendants Officers Ritterson, Michel, and Devore and Sgt. Adler are not precluded by time bar.  We then deny Defendants' motion as to the use of excessive force and state law assault and battery claims against Defendants Officers Ritterson, Michel, and DeVore, but grant the motion as to all claims against Officer Cooper and Sgt. Adler and the remaining claims against Officers Ritterson, Michel, and DeVore.

## II.    FACTUAL AND PROCEDURAL HISTORY

On August 14, 2012, Bynum and a friend, Dayan Brown, were operating dirt bikes westbound in the eastbound lane of traffic and on the sidewalk at and near the intersection of 38th and Market Street in Philadelphia. (RSUMF at ¶ 5; Pl.'s Dep. at 66:17-70:03.)  These actions were observed by patrolling Officer Cooper who intervened and attempted to engage Bynum. (SMF at ¶¶ 7-10.)  Bynum was attempting to pull off of the road as his bike had cut off. (RUSMF at ¶ 5.)

The parties dispute the particulars of what next occurred. Defendants assert that as Officer Cooper approached Market Street from 38th Street, he heard and saw the dirt bikes going in the wrong direction, and "believed that the two men had driven their bikes through a red light, among other traffic violations." (SMF at ¶¶ 7-8.)  In an effort to stop Bynum, Officer Cooper

2

pulled his police car over to the side of the road and told Plaintiff to get off of his bike. (SMF at ¶ 9.)  Bynum did not comply. (SMF at ¶¶ 9-11.) Officer Cooper then attempted to stop Bynum again after he drove his bike onto the sidewalk but Plaintiff reportedly did not comply this second time, revved his motor, and moved in the direction of Officer Cooper. (SMF at ¶¶ 11-12.) Officer Cooper stepped out of the way and Plaintiff left his bike, ran across Market Street and hopped onto the back of Brown's bike as they both rode away from the police. (SMF at ¶¶ 13-16.) At this point, Officer Cooper requested assistance by radio. (SMF at ¶ 17.)

Plaintiff challenges Officer Cooper's account, asserting that surveillance videos of the intersection reveal that it was not possible for him to see the intersection of 38th and Market Streets as he gets to that point only after Bynum and Brown have taken off. (RSUMF at ¶ 7.) Bynum also asserts that he did not run a red light at this point, as shown in the intersection video. (RSUMF at ¶ 8.)

While Officer Cooper stayed with Bynum's dirt bike, Officers Michel, Ritterson, and DeVore responded to Officer Cooper's radio call and chased Bynum, who was still a passenger on Brown's bike, to 34th and Wallace Streets. (SMF at ¶ 18; CSUMF at ¶ 60.)  During the pursuit, the officers saw Plaintiff and Brown run through red lights and stop signs and drive the wrong way on one-way streets. (SMF at ¶ 21.)  Sgt. Adler called to break off the pursuit but after Officer Michel told him that the passenger was right in front of her, riding slowly, and possibly running out of gas, Sgt. Adler ordered her to break it off after another block. (SMF at ¶ 22; RSUMF at ¶ 22.)  Officer Michel, however, continued the pursuit after the one block because she believed she could continue to do it in a safe manner. (RSUMF at ¶ 23.)  The officers also turned off their lights and sirens. (RSUMF at ¶ 25.)   Bynum alleges that the officers were trying to swerve into their bike and to hit them with their ASPs. (RSUMF at ¶ 24.)  Bynum claims that he

was forced to jump off the bike, which caused him to land awkwardly and break a bone in his leg. (CSUMF at ¶ 62.)   He asserts that Officers Michel, Ritterson, and DeVore then caused further injury by using unreasonable and unnecessary force against him by putting more pressure on his broken leg in an attempt to control him, dragging him to the police wagon and throwing him on the floor of the back of the wagon, and driving to the hospital in such a manner as to toss him around in the back of the wagon. (CSUMF at ¶¶ 97-101.)   Plaintiff was treated at Presbyterian Hospital for his injuries. (SMF at ¶ 32.)

On July 31, 2014, Bynum filed his first lawsuit concerning this incident naming the Trustees of the University of Pennsylvania, the University of Pennsylvania, University of Pennsylvania Police Officer Gary Cooper, and ten John Doe defendants. (Compl. at ¶ 1; *see Bynum v. Trustees of the University of Pennsylvania et al.*, Civ. No. 14-04548 ("*Bynum I*").) In *Bynum I*, the Court dismissed all counts against the Trustees of the University of Pennsylvania as well as the official capacity claims against Officer Cooper. *See* Civ. No. 14-04548, Doc. 12. The parties stipulated to the dismissal of the University of Pennsylvania and the state law claim of "interference with state constitutional rights." (Civ. No. 14-04548, Doc. 5.)  Bynum continued to pursue his claims against Officer Cooper and the John Doe Defendants.  He did not learn the identities of the officers directly involved in the apprehension until Officer Cooper produced his initial disclosures in *Bynum I* on January 27, 2015.  (Pl. Br. at 3.)  He further learned of the other officers involved in Officer Cooper's response to a request for a production of documents on February 20, 2015. (Compl. at ¶ 10.)

Once Bynum learned the identities of the other officers involved, he asked defense counsel to consent to have the officers' identities substituted for the John Does listed in *Bynum I*. (Pl. Br. at 3.)  Penn refused, noting that the two year limitation period had run. (*Id.*)  On March

23, 2015, Bynum then filed the present action against the Trustees of the University of Pennsylvania and Officers Michel, Ritterson, and DeVore, Supervisor John Peterson, and Sergeant Adler (*"Bynum II"*).  In response to a motion, this Court dismissed the *Monell* claims against the Trustees (Counts I and II), a claim for "denial of access to courts" (Count V), and a claim for "interference with state constitutional rights" (Count VI). (Doc. 20.)   As a result, Defendant Supervisor John Peterson was dismissed, as the only claims brought against him were under Count I and Count V.   The claims remaining against Officers Cooper, Michel, Ritterson, and DeVore, and Sgt. Adler are brought pursuant to Section 1983 for claims of excessive force, unlawful seizure, false arrest, and false imprisonment, as well as state law claims for assault and battery, false imprisonment, abuse of process, negligent infliction of emotional distress, negligence, and gross negligence.

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that, if accepted, "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.*

In a summary judgment analysis, "[t]he moving party has the initial burden of demonstrating that no genuine issue of material fact exists." *Josey v. John R. Hollingsworth, Corp.*, 996 F.2d 632, 637 (3d Cir. 1993) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). After the initial burden is met, "the burden shifts to the nonmoving party to present

evidence that there is a genuine issue for trial." *Id.* (citing *Celotex Corp.*, 477 U.S. at 324). When deciding whether there is a genuine issue for trial, "the inferences drawn from the underlying facts in the materials must be viewed in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). While the inferences are viewed in "the light most favorable" to the nonmoving party, they "must do more than show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, where "reasonable minds can differ as to the import of proffered evidence that speaks to an issue of material fact, summary judgment should not be granted." *Gelover v. Lockheed Martin*, 971 F.Supp. 180, 181 (E.D. Pa. 1997).

## IV.   DISCUSSION

Defendants structure their arguments as the basis for their summary judgment motion in three sections. First, they argue that the claims against Officers Michel, Ritterson, and Devore, and Sgt. Adler are time-barred as the limitation period had expired by the time he named them in this action (*Bynum II*) and that Plaintiff failed to undertake a diligent effort to discover the proper identities of the John Does. (Def. Br. at 7.)  Second, they assert that they are entitled to qualified immunity thereby precluding Plaintiff's Section 1983 claims for excessive force, unlawful seizure, false arrest, and false imprisonment from going forward.  (Def. Br. at 9-16.)  They also assert that Plaintiff failed to establish personal involvement by specifically identified Defendants as to the Section 1983 claims, that the unlawful seizure, false arrest, and false imprisonment claims fail in light of probable cause justifying their actions, and that the force used in the apprehension of Plaintiff was objectively reasonable. (Def. Br. at 16-21.)  Third, Defendants assert that even if the Court chooses to exercise supplemental jurisdiction over Plaintiff's state law claims for negligence, gross negligence, negligent infliction of emotional distress, abuse of

process, assault and battery, false arrest, and false imprisonment, these claims fail as a matter of law. (Def. Br. at 22-26.)

We will address Defendants' arguments in the order in which they were presented.

## A.  Time Bar - Officers Ritterson, Michel, and DeVore and Sgt. Adler

### 1.  Setting

The precise issue before us here is whether Plaintiff's claims against Officers Ritterson, Michel, and DeVore, and Sgt. Adler ("the Officers") were timely filed.  The parties agree that the limitation period of two years began to run on August 14, 2012.  (*See* Pl. Br. at 2.)  On July 31, 2014, Plaintiff filed *Bynum I* naming the Trustees, the University, Officer Cooper, and ten John Doe defendants. (Compl. at ¶ 1.)  Following a dismissal of certain claims by Judge Dalzell, Plaintiff was left to pursue his remaining claims against Officer Cooper and the John Doe Defendants, alleging Section 1983 and state law claims. *Bynum v. Trustees of the University of Pennsylvania, et al.*, 2014 WL 6473344, *6 (E.D. Pa. Nov. 18, 2014) (Dalzell, J.).  On January 27, 2015, Plaintiff received Officer Cooper's initial disclosures revealing the identities of Officers Ritterson, Michel, DeVore, and Sgt. Adler. (Doc. 20, at 4.)   On March 23, 2015, more than 7 months after the limitation period had run Plaintiff filed *Bynum II* against the Trustees and the newly identified officers.  We must determine whether Plaintiff may be excused from his late filing by the application of Pennsylvania state law tolling principles.

Plaintiff relies upon this Court's July 23, 2015 ruling on the Defendants' motion to dismiss the newly named officers, where Judge Dalzell held that Plaintiff's claims were timely as the limitations period had been tolled.[1] (Doc. 20, at 13.)   Judge Dalzell found that he was

---

[1] Plaintiff also presents two additional arguments. First, Plaintiff argues that he was unable to learn the identities of all the officers involved in the incident before Defendant Officer Cooper's initial disclosure in *Bynum I*. (Pl. Mem. at 7.)  He then argues that once the security cameras

"entitled to the benefit of Pennsylvania's discovery rule," which tolls the statute of limitations when a plaintiff, despite the exercise of due diligence, is unable to know of the existence of an injury and its cause. (*Id.*)  As applies here, Plaintiff was certainly aware of his injury but he could not know its cause without establishing the identities of those involved.  Judge Dalzell held that Plaintiff had proceeded with "reasonable diligence" by filing *Bynum I* within the two year limitation period, responding to Defendants' motion to dismiss, attending the Rule 16 conference, and beginning to exchange discovery with Defendants. (Doc. 20 at 12.)  Moreover, once Plaintiff learned the identities of the remaining Defendants from Officer Cooper's initial disclosure on January 27, 2015, he promptly filed *Bynum II* naming the officers.[2] (*Id.*)

---

demonstrated that Officer Cooper's report was false, UPENN Police Department Officer Lt. Peterson had the investigation reassigned from the Philadelphia Police Department to the UPENN Police Department and deleted the PARS entry that contained the officers' names. (*Id.*) Plaintiff asserts that he had no way of knowing the officers' identities without the PARS. (Pl. Br. at 8.)  Second, Plaintiff argues that the diligence suggested by the Defendants (i.e., Freedom of Information request) would have been fruitless as it would not have provided him with any additional information regarding the other officers' names. (Pl. Mem. at 9.)  However, these arguments need not be addressed as this Court denies summary judgment primarily on Plaintiff's argument regarding Judge Dalzell's earlier ruling.

[2]     Bynum alleged that Officer Cooper and the named Defendants conspired to cover up the illegal activities of Penn police personnel. (Compl. at ¶ 7.)  He asserted that once the "security cameras showed that Officer Cooper's statements were false, Defendant, University of Pennsylvania Police Investigative Supervisor, John Peterson, requested that the investigation be reassigned from the Southwest Detectives Division ("SWDD") of the Philadelphia Police Department to the University of Pennsylvania Police Department and that the PARS [Philadelphia Police Department Arrest Report] entry be deleted from the SWDD's queue." (Compl. at ¶ 15.) Bynum alleged that after the PARS was deleted, he was also unable to identify the other officers involved in the incident until Officer Cooper's disclosure. (Pl. Br. at 7-8.)

Judge Dalzell notes that accepting the facts as pled in the complaint, until Plaintiff received Officer Cooper's initial disclosures, "he had no reason to know the names of the additional officers involved in his apprehension or to know that University of Pennsylvania police personnel might have taken action to investigate, alter, or amend documents related to his apprehension." (Doc. 20 at 12.)

Defendants reject this argument stating that Plaintiff failed to meet his burden of showing he exercised diligence in determining who was responsible for his injuries. (Def. Mem. at 8.) Defendants rely on Plaintiff's deposition, taken during discovery, where he disclosed that he made no "effort after [the] incident to identify any of the other officers at the scene."[3] Defendants assert that Plaintiff failed not only to undertake "reasonable diligence" to learn the identities of the officers involved before the limitations period ran, but failed to do any diligence whatsoever.  (Def. Mem. at 9.)  Moreover, Defendants contend that Judge Dalzell's denial at the motion to dismiss phase does not foreclose a contrary ruling at this time now that discovery is completed.[4] (Def. Reply at 7.)  As such, Defendants assert that the limitations period should not be tolled and the claims against the officers dismissed. (*Id.*)

   **2.  *Analysis***

   *Bynum II* would only be considered timely filed if Plaintiff establishes that he is entitled to the benefit of a tolling principle. As state law controls the length of a limitation period for a

---

[3] The relevant excerpt is as follows:
   Q:     [D]id you make any effort after this incident to identify any of the other officers at
          the scene.
   A:     No.
   Q:     Did you make any telephone calls?
   A:     No.
   Q:     Did you send any emails?
   A:     No.
   Q:     Did you make any freedom of information request to the government?
   A:     No.
   Q:     Did you go to the courthouse and try to look at files or anything like that?
   A:     No.
   Q:     Have you at any time done any of those things?
   A:     No.
(Def. Br. at 8-9 (*quoting* Def.'s Exh. 4, Bynum's Dep. at 114:18-115:12.).)

[4] They assert that "decisions in the Circuit anticipate that Plaintiff's invocation of fraudulent concealment or equitable tolling will be tested on a motion for summary judgment." (Def. Reply at 7 (*citing Forbes v. Eagleson*, 228 F.3d 471, 486-87 (3d Cir. 2000).)

Section 1983 claim, state tolling rules apply. *Lake v. Arnold*, 232 F.3d 360, 368 (3d Cir. 2000). Pennsylvania's discovery rule and fraudulent concealment doctrines are the two tolling principles in play here. The discovery rule tolls the limitations period when a plaintiff, despite the exercise of due diligence, is unable to know of the existence of an injury and its cause. *Bohus v. Beloff*, 950 F.2d 919, 924 (3d Cir. 1991). Under the doctrine of fraudulent concealment, the statute of limitations is tolled where "through fraud or concealment the defendant causes the plaintiff to relax his vigilance or deviate from the right of inquiry." (*Id.* at 925 (*quoting Ciccarelli v. Carey Canadian Mins, Ltd.*, 757 F.2d 548 556 (3d Cir. 1985).) Whether either the discovery rule or the fraudulent concealment doctrine applies, the statute of limitations is tolled until the plaintiff knew or using reasonable diligence should have known of the claim in question. *Id.* at 925-26. While a jury is typically tasked with this determination, the commencement of the limitation period may be determined as a matter of law "where the facts are so clear that reasonable minds cannot differ." *Knopick v. Connelly*, 639 F.3d 600, 611 (3d Cir. 2011) (*quoting Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*, 264 F.3d 302, 307 (3d Cir. 2001)).

We are mindful of the proposition that where a ruling has already been made on a specific issue the law of the case doctrine provides that the court's initial decision should be respected by a subsequent judge on the same case. *Carmichaels Arbors Assocs. v. U.S. Through Dep't of Hous. & Urban Dev.*, 789 F. Supp. 683 (W.D. Pa. 1992). While there are exceptions to this rule they are quite narrow and are reserved for situations "'where there has been an intervening change in the law, where new evidence has become available, or… reconsideration is necessary to prevent clear error or a manifest injustice.'" *In re Engel*, 124 F.3d 567, 584 (3d. Cir. 1997) (*quoting AL Tech Specialty Steel Corp. v. Allegheny Int'l Credit Corp.*, 104 F.3d 601, 605

(3d Cir. 1997)).   We acknowledge Defendants' argument that Plaintiff's deposition was not before Judge Dalzell when he ruled on the motion to dismiss and we accept that Bynum's deposition testimony that he exercised no diligence could qualify as "new evidence."  We note however that Judge Dalzell in concluding that Bynum exercised due diligence relied upon his (1) filing of *Bynum I* within the applicable statute of limitations, (2) responding to Defendant's motion to dismiss, (3) attending the Rule 16 conference, (4) beginning to exchange discovery with Officer Cooper, and (5) promptly filing a new lawsuit once Plaintiff discovered the remaining officers' names from Officer Cooper's initial disclosure. (Doc. 20, at 12.)   Judge Dalzell found these steps to be adequate to excuse the late filing.  Plaintiff's deposition evidence does not challenge or negate any of these steps that Judge Dalzell found to constitute "reasonable diligence." We will not disturb his decision.  Defendants' motion based upon application of the limitation argument is denied.

### B.  Constitutional Claims

We proceed next with a consideration of Plaintiff's claims of constitutional deprivation first with respect to Plaintiff's unlawful seizure claim and the related claims of false arrest and false imprisonment, and then with respect to his claims of excessive force.  Before doing so, however, we address the question of qualified immunity.

#### 1.  *Qualified Immunity*

Defendants argue that they are entitled to qualified immunity in that their conduct did not violate Plaintiff's clearly established Fourth Amendment constitutional right to be free from unlawful seizure, false arrest, false imprisonment, and excessive force.  (Def. Br. at 9-16.)  The doctrine of qualified immunity protects government officials sued in their individual capacity "from liability insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Gilles v. Davis*, 427 F.3d 197, 203 (3d Cir. 2005) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The Supreme Court has set out the following two-prong inquiry to guide courts in determining whether qualified immunity applies: (1) in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right; and (2) if the first step is satisfied, whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 207 (2001).  However, "when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury." *Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006).  While qualified immunity is generally a question of law, when a genuine dispute of material fact exists, it will preclude summary judgment on qualified immunity. *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009).

Defendants argue there are no constitutional violations for excessive force because their actions were objectively reasonable. (Def. Br. at 11.)  Moreover, they assert that there are no constitutional violations for unlawful seizure, false arrest, or false imprisonment because they had probable cause to arrest Plaintiff on the day in question.  (*Id.*)  Plaintiff rejects these arguments, asserting that there are questions of material fact for a jury to resolve.  (Pl. Br. at 11.)

We review each Section 1983 claim separately below and conclude that, where there are factual issues in dispute – as here with respect to Plaintiff's excessive force claim – we must await a jury determination of the factual issues before we apply the principles of qualified immunity. *See Monteiro*, 436 F.3d at 405; *Giles*, 571 F.3d at 322.  We also conclude, as we set out in the next section, that there are no material factual questions in dispute with respect to the unlawful seizure, false arrest, or false imprisonment claims.  Defendants are entitled to qualified immunity on these claims.

### *2. Unlawful Seizure, False Arrest, and False Imprisonment*

Plaintiff asserts the Fourth Amendment claim of unlawful seizure against all of the Penn Police Defendants and claims for false arrest and false imprisonment against Officer Cooper only. A "seizure" occurs when a government officer, "by means of physical force or show of authority ... restrains the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968). Specifically, "[a]n officer seizes a person whenever he 'restrains the freedom of a person to walk away.'" *Curley v. Klem*, 499 F.3d 199, 203 n. 4 (3d Cir. 2007) (quoting *Tennessee v. Garner*, 471 U.S. 1, 7 (1985)). The Fourth Amendment only protects against seizures that are unreasonable. *Vargas v. City of Philadelphia*, 783 F.3d 962, 970 (3d Cir. 2015) (*citing United States v. Sharpe*, 470 U.S. 675, 682, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985)). Reasonableness is determined by balancing "the need of law enforcement officials against the burden on the affected citizens and considering the relation of the policeman's actions to his reason for stopping the [individual]." *Baker v. Monroe Twp.*, 50 F.3d 1186, 1192 (3d Cir.1995). The kinds of actions that may constitute a seizure include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Vargas v. City of Philadelphia*, 783 F.3d 962, 969 (3d Cir. 2015) (*citing United States v. Crandell*, 554 F.3d 79, 85 (3d Cir.2009).)

To establish a false arrest claim, a plaintiff must show that the arresting officers lacked probable cause. *Groman v. Twp. Of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). Similarly, to establish a false imprisonment claim, a plaintiff must show that (1) he was arrested (2) without probable cause and (3) detained pursuant to that arrest. *Id.* These claims thus turn on whether there was probable cause for the arrest. "Probable cause to arrest exists when the facts and

circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995).  In determining whether probable cause existed for an arrest, the court must take a "totality-of-the-circumstances approach." *Illinois v. Gates*, 462 U.S. 213 (1983). The court applies an objective standard based on "'the facts available to the officers at the moment of arrest.'" *Barna v. City of Perth Amboy*, 42 F.3d 809, 820 (3d Cir.1994) (quoting *Beck v. Ohio*, 379 U.S. 89, 96 (1964)).  Probable cause "requires more than mere suspicion." *Orsatti*, 71 F.3d at 482.  However, it does not "require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972).

Defendants argue that Plaintiff's claims of unlawful seizure against all of the Penn Defendants and the additional false arrest and false imprisonment claims against Officer Cooper should be dismissed as the officers had probable cause to arrest him.[5] (Def. Br. at 15.) They assert that on the day in question, Officer Cooper attempted to pull Plaintiff over for violating multiple motor vehicle laws but Plaintiff ignored him, revved his engine, and moved toward him on his dirt bike. (*Id.*)  Plaintiff then fled and mounted Brown's dirt bike. (*Id.*) Officers Ritterson, Michel, and DeVore then received the radio call from Officer Cooper that he was almost struck by a suspect who turned out to be Plaintiff. Officer Cooper explained on the call that:

> A BM [black male] with blue short sleeve shirt black pants running north on 38th street from Market. He almost struck the police car with an uh motorcycle. He dropped the motorcycle and he's running . . .He is last seen headed north on 38th from Market towards Presby.  He is about 6ft, blue jeans, a short sleeve blue

---

[5] We observe that Defendants take the position that the presence of probable cause dooms all three of the claims.  They are certainly correct on that point but we note that the elements of unlawful seizure are articulated with reference to reasonable conduct, a somewhat lesser standard than probable cause. *Terry v. Ohio*, 392 U.S. 1 (1968).

shirt.

(Doc. 44-2, at 188 (Def.'s Exh. 9, Amended University of Pennsylvania Police Department Communication Tape Log).)  Immediately after this description, the instruction was given that "somebody secure that motorcycle."[6] (*Id.*) In response, Officers Ritterson, Michel, and DeVore located and pursued Plaintiff.[7] (Doc. 44-3, at 3 (Def.'s Exh. 12, Officer Michel's Dep.); Doc 44-3, at 17 (Def.'s Exh. 13, Officer Ritterson's Dep.).)  Plaintiff and Brown continued to evade the officers, running through red lights and stop signs, before Plaintiff jumped off of the bike and broke his leg.[8] (Doc. 44-3, at 3, 4, and 9 (Def.'s Exh. 12, Officer Michel's Dep.).)  Defendants assert that: "[h]aving believed that Plaintiff committed an earlier aggravated assault on Officer Cooper and knowing that Plaintiff fled from Officer Cooper and was continuing to flee them, Officers Michel, Ritterson, and DeVore had probable cause to believe that Plaintiff had committed or was committing a crime." (*Id.*)  Accordingly, Defendants argue that probable cause existed and that the claims against them should be dismissed. (*Id.*)

---

[6] While it is unclear as to who specifically gave the instruction, as the identities of the speakers are coded, it is likely that this was the police dispatcher.  It was not Officer Cooper as his abbreviated name was "M1" and the person giving the instruction was "Sam7".

[7] Officer Michel stated in her deposition that "Officer Cooper came over the radio and stated that defendant, Brandon Bynum, attempted to strike him or his vehicle while he was on his dirt bike . . . . He put out flash information. I observed the males . . . . Got behind them." (Doc. 44-3, at 3 (Def.'s Exh. 12, Officer Michel's Dep.).)  Officer Ritterson similarly explained that he became aware of the incident when "Officer Cooper [went] over our police radio stating that two males on dirt bikes attempted to hit him." (Doc. 44-3, at 17 (Def.'s Exh. 13, Officer Ritterson's Dep.).)  After he received the call, Officer Ritterson "began looking for the offenders." (*Id.* at 18.)

[8] In Officer Michel's deposition, she explained: "I activated my lights and sirens to which they did not stop. The defendant, Bynum, was on the back of the dirt bike using his hands as a description as to which direction for the driver of the dirt bike to go." (Doc. 44-3, at 3 (Def.'s Exh. 12, Officer Michel's Dep.).)  She also testified that she was chasing Bynum on the back of Brown's bike with the sirens and lights of the police vehicle on, they did not stop, and that they proceeded through red lights during the chase. (*Id.* at 4, 9.)

Plaintiff contends that the determination of probable cause should be reserved for the jury and that critical aspects of Officer Cooper's testimony are contradicted by the surveillance camera evidence. (Pl. Br. at 15.)  Specifically, a question of fact exists as to whether Officer Cooper could actually see the bike. (*Id.*) Moreover, Plaintiff testified that he ran as soon as he saw Officer Cooper, but that Cooper did not speak to him. (*Id.*)  Bynum also argues that Officer Cooper was not truthful about his account leading to the aggravated assault charge – as evidenced by Supervisor Peterson's decision to withdraw the criminal charges.  Accordingly, Plaintiff believes that these circumstances create genuine issues of material fact to be reserved for the jury. (*Id.*)  Considering these claims as to each defendant, we disagree.

### a.   Sergeant Adler

Preliminarily, as Plaintiff withdrew the unlawful seizure claim against Defendant Sgt. Adler in his response to Defendants' summary judgment motion (Pl. Br. at 16, n. 2), Defendants' motion is granted on this basis.  Sgt. Adler is dismissed from the case.

### b.   Officers Ritterson, Michel, and DeVore

We conclude that Officers Ritterson, Michel, and DeVore had a reasonable basis upon which to effectuate a seizure.  For this reason, his unlawful seizure claims against them fail. We consider the question of unlawful seizure under the reasonableness standard. *See Baker,* 50 F.3d at 1192; *Vargas*, 783 F.3d at 969. Here, it is undisputed that Officers Ritterson, Michel, and DeVore received a police radio call from Officer Cooper that Bynum "almost struck the police car with [a] . . . motorcycle." (Doc. 44-2, at 188 (Def.'s Exh. 9, Amended University of Pennsylvania Police Department Communication Tape Log).)  In response, the officers initiated a pursuit of Plaintiff on Brown's dirt bike. Plaintiff and Brown did not pull over. Based on the information supplied in the police radio call and the officers' observation of Plaintiff's continued

16

evasion of them, a reasonable officer under the circumstances would believe that Plaintiff had committed or was committing a crime. *See e.g., United States v. Navedo*, 694 F.3d 463, 474 (3d Cir. 2012) ("Unprovoked flight can only elevate reasonable suspicion to probable cause if police have "reasonably trustworthy information or circumstances" to believe that an individual is engaged in criminal activity, as was the case in *Laville,* 480 F.3d at 194.)  Plaintiff does not point to any record evidence to undermine the contention of these officers that they seized him because of the radio call made by Officer Cooper and their observation of his conduct.  There is thus no basis upon which a jury could find that the officers lacked probable cause to effectuate the seizure.[9]  Defendants' motion as to the unlawful seizure claims against Officers Ritterson, Michel, and DeVore is granted.

### c. *Officer Cooper*

Plaintiff's unlawful seizure, false arrest, and false imprisonment claims against Defendant Officer Cooper are also dismissed. We appreciate that it was the radio call put out by Officer Cooper about his interaction with Bynum that led to the pursuit and ultimate apprehension undertaken by Officers Ritterson, Michel, and DeVore.  It is uncontradicted, however, that Officer Cooper did not participate in the actual seizure, even as he was later brought to make an on-site identification.  Plaintiff has presented us with no authority supporting the proposition that the officer who provides the report – here a report that established probable cause – would make him responsible under the Fourth Amendment for the actual seizure or subsequent arrest and alleged imprisonment in which he did not participate.[10]

---

[9] Inasmuch as our inquiry is limited to what the responding officers knew at the time, Plaintiff's argument about the accuracy or truthfulness of the information that Officer Cooper supplied to them has no relevance here.

[10] We do observe, however, that a 14th Amendment substantive due process claim might have

### 3. *Whether Defendants Violated Plaintiff's Constitutional Right Against Excessive Force*

Excessive force claims in the context of an arrest or investigatory stop fall under the Fourth Amendment's protections against unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 394 (1989). Courts analyze such excessive force claims using the Fourth Amendment's objective reasonableness standard. *Brown v. Rowan*, 2016 WL 861331, at *4 (E.D. Pa. Mar. 7, 2016). This standard balances the quality of the intrusion on the Fourth Amendment right and the governmental interests. *Graham*, 490 U.S. at 396.   The inquiry is focused on whether the officers' actions were objectively reasonable in light of the circumstances with which they were confronted, "without regard to their underlying intent or motivation."  *Graham*, 490 U.S. at 397. The use of force is evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," while recognizing that "police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary." *Id.* at 396-97.   Courts consider a list of factors to make this determination, including: whether the suspect posed an immediate threat to the safety

---

been available here had it been plead.  In *Rivas v. City of Passaic*, 365 F.3d 181 (3d Cir. 2004), the Third Circuit denied the motion of EMTs, as state actors, where the court concluded that there was a factual basis to conclude that there had been a misrepresentation about whether Rivas, the plaintiff in that case, had assaulted an EMT responding to a medical emergency suffered by Rivas.  The court concluded that where the EMTs "consciously disregarded a great risk of serious harm to Mr. Rivas by misrepresenting the assault and then abandoning Mr. Rivas to the police, particularly since EMTs are supposed to render aid and assistance to those in need of medical assistance" summary judgment had to be denied. (*Id.* at 196.)  *See also Jarrett v. Twp. Of Bensalem*, 312 F. App'x 505, 507 (3d Cir. 2009) (granting summary judgment on claims arising from consequences of allegedly false police report filed by officers, where plaintiff did not allege deprivation of life, liberty, or property); *Bush v. City of Philadelphia*, 1999 WL 554585, *6 (E.D. Pa. July 16, 1999) (finding no cognizable claim based on officer's police report concerning motor vehicle accident where report "did not cause [plaintiff] a constitutional deprivation").   What is critical here, however, is that Bynum has not pled a Fourteenth Amendment due process claim against Cooper or any of the other defendants.  Any potential theory under a due process analysis is not available to him and cannot protect the claims against Cooper from summary judgment.

of the officers or others; the severity of the crime; and whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Stewart*, 717 F. Supp. 2d at 460. When an arrestee resists or fails to comply with an officer's orders, the officer is entitled to use reasonable force, even if the arrestee is already handcuffed. *Brown*, 2016 WL 861331, at \*5.

With respect to Officers Ritterson, Michel, and DeVore, who were directly involved in the pursuit and apprehension of Plaintiff, Defendants assert that their actions were objectively reasonable. (*Id.*) They argue that there is no accusation by Plaintiff that the officers "beat him, tasered him, or used their batons to physically harm Plaintiff," that any police vehicle touched him or the dirt bike, or that he sustained any injuries from being handcuffed. (Def. Br. at 13-14.) Accordingly, Defendants contend that in light of Officer Cooper's radio call, Plaintiff's evasion of the police, and Plaintiff's resistance to being handcuffed, the amount of force used by the Defendants was objectively reasonable. (*Id.*)

Plaintiff argues that these issues create genuine issues of material fact and should be given to a jury to decide. (Pl. Br. at 12.) He asserts that the decision of Officers Ritterson, Michel, and DeVore to ignore Sgt. Adler's "order" to cease the pursuit was not reasonable and excessive in and of itself. (*Id.*) Plaintiff contends the officers' force was also excessive in that Defendants pursued the bike without lights and sirens, hung out their windows and tried to hit Plaintiff and Brown with their ASPs, and used their vehicle to run the dirt bike off the road. (*Id.*) Plaintiff then turns to Defendants' actions after-the-fact, arguing that these actions "demonstrate that they knew their conduct was unreasonable." (*Id.*) Specifically, Plaintiff asserts that Defendants Cooper, Ritterson, Michel, and DeVore falsely reported information to Southwest Detectives of the Philadelphia Police Department,[11] and made several omissions of material

---

[11] Plaintiff alleges that Defendants falsely report to Southwest Detective that Plaintiff tried to hit

19

fact.[12] Plaintiff contends that based on these false statements, Southwest Detectives drafted paperwork charging Plaintiff with various crimes. (Pl. Br. at 13.)  However, after Lt. Peterson reviewed the security camera, he sought and received approval from the Philadelphia Police Department to transfer the case from Southwest Detectives to the Penn Police. (*Id.*) This lead to the deletion of the Philadelphia Police Department Arrest Report ("PARS") from the system, which resulted in no criminal charges being lodged against him. (*Id.*)

### a. Sergeant Adler and Officer Cooper

Defendants point out that Sgt. Adler is not accused of using any force against Plaintiff, he was not engaged in the pursuit, or even present at the time the injuries were sustained. (Def. Br. at 13-14.)  In fact, he arrived on the scene only after Plaintiff had already jumped off of the bike. (Def. Br. at 21.)  As a trained medic, however, he did examine Plaintiff's leg and made the decision to have him transported to the hospital. (*Id.*)  It is perhaps for this reason that Plaintiff withdrew his excessive force claim against Sgt. Adler in his response to Defendant's motion for summary judgment. (Pl. Br. at 16, n.2.)  Accordingly, Defendants' motion for summary is granted as to Sgt. Adler on this claim.

With respect to Officer Cooper, we observe that Plaintiff has made no allegations of any force used by Officer Cooper against Plaintiff, let alone excessive force. Defendants referred to testimony from Plaintiff's deposition showing that Plaintiff does not even recall seeing Officer

---

Officer Cooper (not his vehicle), Plaintiff was resisting arrest, and that they called for back-up when they did not. (Pl. Br. at 12-13.)

[12] Plaintiffs allege that Defendants did not inform Southwest Detectives that: "(1) They disobeyed Defendant, Sgt. Adler's, order to stop the pursuit; (2) They were no longer in pursuit; (3) They were just 'following' Mr. Bynum; (4) That, while following Mr. Bynum, they did not have their lights and sirens on; (5) That they were hanging out the window trying to strike Mr. Bynum and the operator with their ASPS; and (6) That they ran the bike off the road." (Pl. Br. at 13 (citations omitted).)

Cooper after the chase began.  (Def. Br. at 13 (*citing* 44-2, at 42-45 (Def.'s Exh. 4, Bynum's Dep.).)  This perhaps explains why Plaintiff has not responded to Defendants' motion with respect to the excessive force claim against Officer Cooper.  Defendant argues that this failure constitutes a waiver of this claim. (Def. Reply at 1, n.1.)  We agree.  *See, e.g., Brown v. Johnson*, 116 Fed. Appx. 342, 345 (3d Cir. 2004) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal") (internal citations omitted); *Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 872 (E.D. Pa. 2000) (deeming certain claims waived when not addressed in the plaintiffs' opposition to the motion for summary judgment). It is in any event clear that no proper excessive force claim could lie against Officer Cooper.

### b.  Officers Ritterson, Michel, and DeVore

Genuine disputes of material fact, however, remain as to whether Defendants' use of force was objectively reasonable under the circumstances. Plaintiff testified that Defendants were pursuing him for several blocks, swinging a baton at him, and attempting to run his dirt bike off of the road. (Doc. 46-10, at 5 (Pl.'s Exh. E, Bynum's Dep.).) He also testified that when the bike came to a corner, the Defendants forced the bike up onto the curb causing him to come off of the bike and to break his leg. (*Id.*)  He explained:

> I started crying and screaming out. The police came right over, put their knee in my knee, put more pressure on my leg. I'm telling them that my leg was broke. They still put me in the handcuffs.  Of course, they lift me up, tried to make me walk on my leg. And I told them that I couldn't walk on it because when I tried to walk on it, my leg, like, turned into a spaghetti . . . . So they dragged me to the paddy wagon and threw me in the back of the paddy wagon.

(*Id.* at 6.)  He then testified that the officers place him unsecured on the floor in the back of the wagon and drove fast, stopped quickly, and hit curves and bumps, all in an attempt to make his

pain worse. (*Id.* at 6-7.) We conclude that a reasonable jury could find for the Plaintiff based on this factual record.

Defendants argue that Plaintiff has failed to establish each officer's personal involvement. Officers Michel and Ritterson, however, describe their roles and Officer DeVore's role in their respective depositions. Officer Michel testified that she was one of the officers in pursuit and at the time of the seizure attempted to handcuff Plaintiff, claiming that he was resisting this effort. (Doc. 44-3, at 8 (Def.'s Exh. 12, Officer Michel's Dep.).) Moreover, she testified to being one of the officers who escorted him into the police wagon. (*Id.*) Officer Ritterson testified that Officer Michel and his partner, Officer DeVore, ran over to handcuff the Plaintiff who had fallen to the ground while he was attempting to manage the crowd forming around the accident. (Doc. 44-3, at 19 (Def.'s Exh. 13, Officer Ritterson's Dep.).) He also testified to being one of the officers who escorted Bynum to the paddy wagon, and that he and Officer DeVore drove him to the hospital. (*Id.* at 20, 22.) We conclude that a genuine issues of material fact remain as to the extent of the officers' conduct and the extent to which their conduct was objectively reasonable. As such, Defendants' motion for summary judgment on these grounds is denied.

### C. State Law Claims

#### 1. *Gross Negligence, Negligent Infliction of Emotional Distress, False Arrest, and False Imprisonment*

As a preliminary matter, Plaintiff withdrew his state law claims of gross negligence, negligent infliction of emotional distress, false arrest, and false imprisonment at the oral argument on December 9, 2016. We will dismiss these claims.

#### 2. *Negligence*

Without setting out any particulars, Bynum had asserted a negligence claim against the

"individual Defendants," which by his motion (but not articulated in his complaint) is grounded in the manner in which the police vehicles were pursuing him as he appeared to be, and by his own admission was in fact, seeking to avoid apprehension by police by "trying to get back home." (Doc. 44-2, at 46 (Def.'s Exh. 4, Bynum's Dep.).) *See also* Doc. 44-2, at 182 (Def.'s Exh. 8, Brown's Dep.) (Q: "You also mentioned you were riding away from the cop cars, that is what you said?" A: "Yes." Q: "Because we [he and Plaintiff Bynum] were hoping to go to our destination.").

The Defendants argue that a negligence claim cannot lie under these circumstances based on the well supported notion that the police owed him no duty. *See Lindstrom v. City of Corry*, 763 A.2d 394, 397 (Pa. 2000) (holding that police officers do not owe a duty to a fleeing suspect). Plaintiff fails to respond to the question of duty directly but rather turns to a consideration of the "vehicle liability" section of Pennsylvania Political Subdivision Tort Claims Act, which permits claims (and therefore imposes a duty) upon political subdivisions with respect to the operation of their motor vehicles. (Pl. Br. at 16.) The Act provides, *inter alia,* that a local agency shall be liable for personal injury caused by the negligent acts of an employee in particular circumstances, including:

> *(1) Vehicle Liability* -- The operation of any motor vehicle in the possession or control of the local agency, provided that the local agency shall not be liable to any plaintiff that claims liability under this subsection if the plaintiff was, during the course of the alleged negligence, in flight or fleeing apprehension or resisting arrest by a police officer or knowingly aided a group, one or more of whose members were in flight or fleeing apprehension or resisting arrest by a police officer. As used in this paragraph, "motor vehicle" means any vehicle which is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.

42 Pa. C.S. § 8542(b)(1). Plaintiff asserts that the Defendant officers were operating motor vehicles and at the time they allegedly forced Brown and Plaintiff off of the road, they were no

longer in pursuit in that Sgt. Adler had ordered them to stop the pursuit. (Pl. Br. at 17.)  Plaintiff explains that Defendants claimed they were only "following" the bike at that point, not pursuing them. (*Id.*)  Plaintiff testified that the negligent manner in which the Defendants were "following" the bike with their vehicles forced them off of the road, causing Plaintiff to break his leg. (*Id.*)  Accordingly, Plaintiff argues that the issue of negligent operation of the motor vehicles by the Defendants involves disputed issues of material fact. (*Id.*)

We reject this argument.  The statute does not withhold immunity based upon whether or not the officers' pursuant was authorized by a commander but rather protects officers from suit when the plaintiff was "in flight or fleeing apprehension."  42 Pa. C.S. § 8542(b)(1).  Here, there is no dispute that Plaintiff was fleeing apprehension.  Therefore, the Vehicle Liability exception does not apply.  No duty is imposed by the statute in this situation and the officers retain their immunity to Plaintiff's negligence claim.[13]  We grant the Defendants' motion as to this claim.

### 3. *Abuse of Process*

To establish a claim for abuse of process, a plaintiff must demonstrate that (1) defendants used a legal process against plaintiff, (2) primarily to accomplish a purpose for which it was not designed, and (3) plaintiff has been harmed as a result. *Lerner v. Lerner*, 954 A.2d 1229 (Pa. Super. Ct. 2008).  "The gravamen of abuse of process is the perversion of the particular legal process for a purpose of benefit to the defendant, which is not an authorized goal of the procedure." *Id.* In analyzing the second prong of an abuse of process claim, "there must be an act or threat not authorized by the process, or the process must be used for an illegitimate aim such as extortion, blackmail, or to coerce or compel the plaintiff to take some collateral action." *Al*

---

[13]   Finally, Defendants also argue that allowing a negligence claim to go to the jury would confuse the jury as it is "inherently inconsistent with Civil Rights Claims." (Def. Br. at 23.) We agree with Defendants on this point, but will ground our determination to reject Plaintiff's position on the lack of duty and immunity rationale.

*Hamilton Contracting Co. v. Cowder*, 644 A.2d 188, 192 (Pa. Super. Ct. 1994) (citation omitted). An essential element of this claim is that charges were brought against the plaintiff. *Cameron v. Graphic Management Associates, Inc.*, 817 F. Supp. 19, 21 (E.D. Pa. 1992).

Defendants assert that Plaintiff was never charged with any crimes but rather, only issued traffic tickets.  (Def. Br. at 24.)  Defendants further argue that there is no evidence on the record establishing that anyone among the Penn Police Defendants improperly used any legal process. (*Id.*)  Plaintiff asserts two propositions which he believes support his abuse of process claim. First, he notes that he was charged with violations of the motor vehicle code. (Pl. Br. at 17.) He then goes on to reiterate his arguments in support of the excessive force claim to argue that Defendants had a deliberate intent to abuse the legal process.[14] (Pl. Br. at 18-20.)

We admit to difficulty in understanding how Plaintiff expects to prove his abuse of process claim.  We note that the claim appears with a laundry list of purported claims set out on his "Sixth Cause of Action, State Law Claims" of his Complaint without any particulars as to which of the preceding 137 enumerated and incorporated paragraphs could be knit together to establish the elements of the claim — even the most basic element of identifying what legal

---

[14] Specifically, Plaintiff asserts that the decision of Officers Michel, Ritterson, and DeVore to ignore Sgt. Adler's order to cease the pursuit was not reasonable and excessive in and of itself. (Pl. Br. at 18.) Plaintiff contends the officers' force was also excessive in that Defendants pursued the bike without lights and sirens, hung out their windows and tried to hit Plaintiff and Brown with their ASPs, and used their vehicle to run the bike off the road. (Pl. Br. at 18-19.) Plaintiff then turns to Defendants' actions after-the-fact, arguing that these actions "demonstrate that they knew their conduct was unreasonable." (Pl. Br. at 19.)  He asserts that Defendants Cooper, Michel, Ritterson, and DeVore falsely reported information to Southwest Detectives of the Philadelphia Police Department and made several omissions of material fact. Plaintiff contends that based on these false statements, Southwest Detectives drafted paperwork charging him with various crimes. (Pl. Br. at 19-20)  However, after Lt. Peterson reviewed the security camera, he transferred the case from Southwest Detectives to the University of Pennsylvania Police Department, deleted the PARS from the system, and Plaintiff was never charged with any crimes. (Pl. Br. at 20.)

"process" was initiated "abusively."   In his response to Defendants' motion dealing with his remaining state law claims, where the Defendants point out correctly that there were never any criminal charges filed against him, Plaintiff ignores that question and reverts to a recitation of the evidence concerning the actions of Sgt. Adler who he says "ordered Defendants, Officers Michel, Ritterson, and DeVore, to cease the pursuit" and that the three officers "disobeyed" the order. (Pl. Br. at 18 (emphasis removed).)   He fails to explain how this "order" from a police sergeant to his subordinates – in the midst of police activity pursuing suspects – constitutes a legal process.   He cites no authority for this proposition.   We also know of no cases finding an abuse of process where, as here, criminal charges were considered but not brought after review by supervisors.[15]   Moreover, Plaintiff has failed to show evidence of how the process of issuing tickets – where four were guilty verdicts – was abused.   Once Defendants' initial burden is met, the burden of production is on the Plaintiff to present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).   Plaintiff has failed to come forward with any such evidence.   Defendants' motion as to the abuse of process claim is granted.

### 4.  *Assault and Battery*

As the Pennsylvania Superior Court has explained, "[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Cohen v. Lit Bros.*, 70 A.2d 419, 421 (Pa. Super. Ct. 1950).   "A police officer may use

---

[15] Moreover, we have found no authority holding that traffic citations can serve as the basis of an abuse of process claim.  In oral argument, we noted *Davis v. Cheltenham Township Police Dept.*, 767 F. Supp. 104 (E.D. Pa. 1991) (Ludwig, J.), but in that case, the abuse of process claim was based upon a disorderly conduct charge and not a traffic violation. We are unwilling to hold on the record before us that the issuance of traffic violations would be a proper basis upon which to bring an abuse of process claim.

reasonable force to prevent interference with the exercise of his authority or the performance of his duty. In making a lawful arrest, a police officer may use such force as is necessary under the circumstances to effectuate the arrest." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (internal citations omitted). It is the reasonableness of the force used in making the arrest that dictates whether the officer's conduct constituted an assault and battery. (*Id.*)

Defendants assert that given their reasons set forth against the excessive force claim, any force used by Defendants was reasonable.  (Def. Br. at 25.) Plaintiff argues that "[b]ased upon the facts of this case where the defendant officers chased Mr. Bynum and ran him off the road at a time they were not in pursuit, Defendants did not act reasonabl[y]." (Pl. Br. at 21.)

We conclude that Plaintiff's claims against Officer Cooper and Sgt. Adler fail as a matter of law, as Plaintiff has not alleged any use of force by either party or even established their involvement in his pursuit. As such, we grant Defendants' motion as to the assault and battery claims against these defendants. Plaintiff's claims against Officers Ritterson, Michel, and DeVore, however, will proceed to trial. For the reasons enumerated in Section IV(B)(3)(c) regarding Plaintiff's excessive force claim against Officers Ritterson, Michele, and DeVore, there are genuine disputes as to material facts concerning the extent to which these officers' conduct was reasonable.

## V. CONCLUSION

For the reasons set out above, we resolve these various claims against the defendants as set out in our Order entered on January 4, 2017. (Doc. 52.)

BY THE COURT:


/s/ David R. Strawbridge, USMJ
DAVID R. STRAWBRIDGE, USMJ.

27